# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Erin Osmon *Plaintiff* | Case No. 20-CV-_____ |
| v. | **COMPLAINT** |
| United States of America, *- and -* TSO Robinson *Defendants* | JURY TRIAL DEMANDED |

## INTRODUCTION

1) Plaintiff Erin Osmon ("OSMON") was a ticketed passenger attempting to travel through Asheville Regional Airport ("AVL") on June 27th, 2019.

2) Passengers traveling through AVL must submit to a security screening by the U.S. Transportation Security Administration ("TSA"), a sub-agency of Defendant United Stqates of America.

3) The TSA maintains specific standards as to how its screeners are to conduct "pat-down" body searches of travelers in order to minimize the invasiveness of searches on passengers.

4) Defendant Transportation Security Officer Robinson ("ROBINSON"), a TSA screener, intentionally, and for the purpose of sexual gratification and/or for the purpose of humiliating, dominating, or controlling OSMON in retaliation for questioning the search, repeatedly violated those standards and unlawfully touched OSMON's genitals, effectively sexually assaulting OSMON in the middle of an airport.

## JURY TRIAL

5) OSMON demands a trial by jury on all issues so triable.

## PARTIES

6) Plaintiff OSMON is a natural person living in Los Angeles, CA.

7) Defendant United States of America is the sovereign nation and proper party for claims brought under the Federal Tort Claims Act.

8) Defendant ROBINSON is a Transportation Security Officer ("TSO") with the U.S. Transportation Security Administration and is sued here in her individual capacity pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). ROBINSON's first name is not currently known and will be added to an amended complaint once identified.

## JURISDICTION & VENUE

9) Personal jurisdiction is proper because all defendants work and, upon belief, reside, within the State of North Carolina.

10) Subject matter jurisdiction is proper over the constitutional claims because they arise under federal law. *See* 28 U.S.C. § 1331.

11) Subject matter jurisdiction is proper for the state law claim brought via the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b).

12) Venue is proper because the incident that gave rise to the complaint occurred within the Western District of North Carolina.

## ALLEGATIONS OF FACT

13) On June 27th, 2019, at or around 1:00 PM, OSMON arrived at Asheville Regional Airport.

14) OSMON possessed a valid boarding pass for a flight departing AVL to Los Angeles, CA, later that day.

15) OSMON approached the TSA screening line, as was required of her as a prerequisite to boarding her flight, and presented a valid photo identification and her boarding pass.

16) OSMON was directed into a body scanner for screening, and complied with that request.

17) OSMON was not in possession of any prohibited items.

18) Notwithstanding her compliance and the absence of prohibited items, OSMON was informed by ROBINSON that the body scanner alarmed on her and that she would need to submit to a "groin search."

19) OSMON asked ROBINSON if the search would involve the touching of her genitals.

20) OSMON clearly and unambiguously advised ROBINSON that she would not consent to the touching of her genitals.

21) ROBINSON advised OSMON that the search would not require such touching.

22) In doing so, ROBINSON intentionally misled OSMON as to the nature of the search in order to fraudulently obtain her cooperation.

23) TSA procedure for "groin searches" as a result of body scanner anomalies does involve direct contact with the genitals of travelers.

24) Such searches consist of up to four parts: a "sliding" part, a "swiping" part, a waistband check, and an explosive trace detection check[1].

---

[1] The waistband and explosive trace checks are not at issue here and discussion is thus omitted.

25) During the "sliding" part, the screener is required to slide his or her hand up the inside of the passenger's leg until the hand "meets resistance" – *i.e.*, the side of the screener's hand touches the penis/scrotum or the labia of the traveler.

26) During the "swiping" part, the screener is required to conduct a swiping motion along the front of the pants of a traveler using *the back of* their hands.

27) The area over which the swiping happens includes the area where the genitals lie on either sex.

28) Thus, ROBINSON had misrepresented to OSMON the nature of search that she was required to conduct and failed to obtain OSMON's consent – indeed, was given explicit refusal to consent – to such a search.

29) But, ROBINSON did not simply search OSMON according to TSA procedure that would require brief contact with the side/back of the screener's hand with the intimate areas of the traveler, but deviated from a normal search in at least four ways.

30) First, TSA provides floor mats with footprints on them to indicate where a traveler should put their feet during a pat-down search.

31) Despite having her feet on the foot prints, ROBINSON insisted that OSMON spread her legs in an abnormally wide manner – far wider than the foot prints dictated – several times.



*Image 1, from AVL security camera footage, showing ROBINSON (blue shirt) and OSMON (hands outstretched). OSMON's feet are already wider than the yellow footprint template provided by TSA to ensure that a traveler's legs are in the correct position for a search.*



*Image 2, ten seconds after Image 1. During those ten seconds, ROBINSON forced OSMON to spread her legs to a substantially wider position.*

32) There was no security purpose fulfilled by forcing OSMON to spread her legs wider.

33) Upon belief, there was no TSA rule or "order" that required or allowed ROBINSON to demand OSMON to spread her legs as described *supra*.

34) Upon belief, the true purpose behind ROBINSON's repeated commands to OSMON to spread her legs wider was to humiliate, dominate, and control OSMON, and to provide greater access to fondle OSMON's vulva for ROBINSON's self-gratification.

35) Second, OSMON was wearing shorts at the time of the search.

36) ROBINSON, while sliding her hand up the inside of OSMON's legs, moved her hands *up inside of* OSMON's shorts to make direct contact with OSMON's vulva.

37) TSA procedure neither requires nor allows screeners to put their hands *up inside of* the outer clothing of a person being screened during the "sliding" part of the screening.

38) Upon belief, the true purpose behind ROBINSON placing her hands inside of OSMON's clothing was to humiliate, dominate, and control OSMON, and to fondle OSMON's vulva for ROBINSON's self-gratification.

39) Third, ROBINSON made two inappropriate comments to OSMON that are demonstrative of her intent.

40) ROBINSON commented on OSMON's attire during the beginning of the "sliding" part, noting that she found OSMON's shorts to be particularly short.

41) ROBINSON commented later during the "sliding" part, after OSMON involuntarily flinched as ROBINSON's hand made contact with her labia, that "if you resist, I will do this again."

42) TSA policy does not permit ROBINSON to conduct "punitive" searches, or to threaten the same.

43) Upon belief, the true purpose behind ROBINSON's commentary was to humiliate, dominate, and control OSMON, and to make OSMON feel like she was to blame, or "deserved," the sexual assault inflicted upon her by ROBINSON, and to feel that she was powerless to stop it.

44) Fourth, ROBINSON conducted the "swiping" part, but during this time she made contact with OSMON's vulva using the front of her hands and her fingertips.

45) As discussed *supra*, TSA policy forbids using front-of-hands during this search and instead requires screeners to use the back of their hands to minimize the intrusion upon the traveler.

46) Upon belief, the true purpose behind ROBINSON using the front of her hands and her fingertips, in violation of TSA policy, upon OSMON's intimate area was to humiliate, dominate, and control OSMON, and to fondle OSMON's vulva for ROBINSON's self-gratification.

47) OSMON was not found to be in possession of any prohibited items.

48) OSMON immediately filed complaints with both TSA management and airport police.

## CLAIMS FOR RELIEF

### Count 1 – Civil Battery
### *(Against United States of America)*

49) ROBINSON, in the performance of her duties as an employee of the United States of America, made physical contact with OSMON's body.

50) The manner and circumstances under which the contact occurred were not authorized by law.

51) The contact made by ROBINSON was to OSMON's genital area.

52) A reasonable person would find such contact to be highly offensive.

53) OSMON did find such contact to be offensive.

54) The contact was made deliberately and intentionally.

55) OSMON did not consent to the *ultra vires* touching of her body.

56) The United States of America is therefore liable to OSMON for the battery committed by ROBINSON.

## Count 2 – Fourth Amendment to the U.S. Constitution
### *Unreasonable Search (Against ROBINSON)*

57) The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures," and in general, a warrant or an exception to the warrant requirement is required before the government may conduct a search without the consent of the searched.

58) The "administrative search doctrine" allows the government to conduct some level of limited warrantless searches under the theory that the searches are aimed at a public safety concern rather than uncovering evidence of criminality (or, in the alternative, under the theory that by presenting one's self at the TSA checkpoint, one is consenting to the search).

59) However, a cornerstone of this exception to the warrant requirement is that an individual may avoid the search by abstaining from the activity at which the search is aimed.

60) As soon as she was notified that TSA would require a "groin search" in order to proceed, OSMON attempted to clarify the nature of the search and placed a limitation on her consent and her desire to proceed.

61) The search of OSMON's groin was therefore conducted without consent, warrant, or the blessing of the administrative search doctrine, and therefore was unreasonable, even if the search were limited to a normal pat-down search.

62) However, even if the administrative search doctrine would have applied and allowed a search in accordance with TSA policies, the search of OSMON's groin exceeded TSA policy and, thus, the boundaries of a Fourth Amendment "reasonable" search.

63) To the extent that the search exceeded TSA policy, ROBINSON did so for the purpose of sexually gratifying ROBINSON and/or humiliating, dominating, and controlling OSMON, perhaps in retaliation for questioning the nature of the search.

64) Given clear and unambiguous policy and training to the contrary, no reasonable TSA screener or manager would have thought that they were allowed to put their hands inside the shorts of a traveler to grope the traveler's vulva, nor to use the front of their hands to grab a traveler's intimate areas during a standard body scanner resolution pat-down.

65) OSMON's constitutional rights were thus knowingly and intentionally violated.

66) Defendant ROBINSON is thus liable for damages stemming from her unconstitutional search of OSMON's person.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

i. Actual damages for battery, loss of liberty, unconstitutional search, and any emotional damages stemming therefrom in an amount to be determined by a jury.
ii. Punitive damages in an amount to be determined by a jury.
iii. Cost of the action.
iv. Reasonable attorney's fees.
v. Any other such relief as the Court deems appropriate.

Dated: Asheville, NC             Respectfully submitted,

February 4th, 2020

_____/s/_____
Jonathan Corbett, Esq.
Attorney for Plaintiff (Lead Counsel)
CA Bar #325608 (*pro hac vice* pending)
958 N. Western Ave. #765
Hollywood, CA 90029
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX:   (310) 684-3870


_____/s/_____
Russell Bowling, Esq.
Attorney for Plaintiff (Local Counsel)
NC Bar #8654
77 West Main Street
Franklin, NC 28734
E-mail: russell@russellbowling.com
Phone: (828) 524-5070
FAX:   (828) 524-5380