IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-CV-31-MR-WCM

| | | |
|---|---|---|
| ERIN OSMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| THE UNITED STATES OF | ) | |
| AMERICA and TSO ROBINSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on the following Motions, which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B):

1. The United States' Motion to Dismiss (Doc. 7) and

2. TSO Robinson's Motion to Dismiss Plaintiff's Complaint (Doc. 14).

Both Motions have been fully briefed. <u>See</u> Docs. 8, 9, 10, 13, & 19 (relative to the United States' Motion to Dismiss); Docs. 15, 16, & 17 (relative to TSO Robinson's Motion to Dismiss); Doc. 20 (Supplemental authority relative to both Motions to Dismiss).

## I. Relevant Background[1]

The Complaint alleges as follows:

Plaintiff Erin Osmon ("Plaintiff") had a ticket to travel by plane from Asheville, North Carolina to Los Angeles, California on June 27, 2019. Prior to boarding her flight at the Asheville Regional Airport, Plaintiff presented herself for security screening. Doc. 1, ¶¶ 13-14.

While in the Transportation Security Administration ("TSA") security line, Plaintiff was directed into a body scanner. Plaintiff was informed that the body scanner had "alarmed on her" and that she would need to submit to a "groin search." Doc. 1, ¶¶ 15-17.

Plaintiff asked Transportation Security Officer Robinson ("Robinson") if the search would require Robinson to touch Plaintiff's genitals and advised Robinson that she would not consent to such touching. Robinson advised Plaintiff that the pat-down procedure would not require that Plaintiff's genitals be touched. Plaintiff alleges that Robinson's response was intended to "fraudulently obtain her cooperation" with the procedure. Doc. 1, ¶¶ 19-22.

---

[1] Defendant United States of America (the "United States") filed certain exhibits with its Motion to Dismiss, including a Declaration by Brett Barber, (Doc. 8-1), a copy of Plaintiff's "Federal Tort Claims Act Notice" (Doc. 8-2, pp. 12-13), and copies of emails between Plaintiff's counsel and Mr. Barber dated September 26, 2019 (Doc. 8-2, pp. 15-16). These documents may be considered in addition to Plaintiff's Complaint. See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

2

Plaintiff alleges that the TSA's procedure for "groin searches" includes direct contact with the genitals of travelers but that such contact is intended to occur through gloves worn by the screener and outside of the traveler's clothing. Plaintiff alleges that Robinson "deviated from a normal search in at least four ways." Doc. 1, ¶¶ 23-24, 29. First, Robinson directed Plaintiff to spread her legs "far wider" than indicated by footprint markings on the floor."[2] Doc. 1, ¶¶ 30-33. Second, Robinson slid her hand inside Plaintiff's shorts and made direct contact with Plaintiff's genitals, even though TSA procedure "neither requires nor allows screeners to put their hands up inside of the outer clothing of a person being screened." Doc. 1, ¶¶ 35-38. Third, Robinson commented that Plaintiff's shorts were "particularly short" while moving her hand up the inside of Plaintiff's shorts. Later, after Plaintiff "involuntarily flinched" during the pat-down, Robinson told her, "if you resist, I will do this again." Doc. 1, ¶¶ 39-41. Fourth, Robinson touched Plaintiff's genitals "using the front of her hands and her fingertips," which is prohibited by TSA policy.

Plaintiff alleges that Robinson's conduct was intended to "humiliate, dominate, and control" Plaintiff, to "make [Plaintiff] feel like she …

---

[2] The Complaint explains that the "TSA provides floor mats with footprints on them to indicate where a traveler should put their feet during a pat-down search." Doc. 1, ¶ 30.

'deserved,' the sexual assault" and "that [Plaintiff] was powerless to stop it." Plaintiff further alleges that the touching was "for Robinson's self-gratification" rather than a security purpose.  Doc. 1, ¶¶ 34, 38, 43, 46.

The search did not reveal any prohibited items.  Doc. 1, ¶ 47.

## II. Legal Standards

### A. Rule 12(b)(1)

A motion to dismiss based on Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1).  A dismissal for lack of subject matter jurisdiction should be without prejudice, since in such a context the court is unable to reach the merits of the case.  See e.g., Beazer E., Inc. v. U.S. Navy, 111 F.3d 129, 134 (4th Cir. 1997) (unpublished).  The plaintiff has the burden of proving that subject matter jurisdiction exists.  Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (citing Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991)).

### B. Rule 12(b)(6)

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the

4

light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Consumeraffairs.com, 591 F.3d at 255.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III.    Discussion

Plaintiff's Complaint includes two claims—a claim for civil battery against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680 and a claim against Robinson in her individual capacity for an unreasonable search in violation of the Fourth

5

Amendment pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

### A. The United States' Motion to Dismiss

The United States argues that dismissal of Count One (the FTCA claim) is warranted under Rule 12(b)(1) because: (1) Plaintiff failed to exhaust her administrative remedies prior to filing this action and (2) even if administrative remedies had been exhausted, the United States' sovereign immunity has not been waived by the FTCA.[3]

### 1. Exhaustion of Administrative Remedies

"The Federal Tort Claims Act (FTCA) provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." <u>McNeil v. United States</u>, 508 U.S. 106, 107, 113 S. Ct. 1980, 1981, 124 L. Ed. 2d 21 (1993) (quoting 28 U.S.C. § 2675(a)). "Moreover, 'the requirement of filing an administrative claim is jurisdictional and may not be waived.'" <u>Kokotis v. United States Postal Service</u>, 223 F.3d 275, 278 (4th Cir. 2000) (quoting <u>Henderson v. United States</u>, 785 F.2d 121, 123 (4th Cir.1986)); <u>see also</u> <u>Parrish v. United States</u>, No. 1:17cv70, 2020 WL 1330350, at * 3 (N.D. W.Va. March 23, 2020) (finding that administrative exhaustion "is a jurisdictional

---

[3] The United States requests that dismissal be without prejudice "to refiling in a *new* action if Plaintiff so chooses after exhausting administrative remedies." Doc. 8, p. 9 (emphasis in original).

prerequisite because Congress has clearly stated it to be so. Accordingly, Fourth Circuit precedent, read together with [Fort Bend County v. Davis, 139 S. Ct. 1843 (2019)] and McNeil and the language of the FTCA, confirms the administrative exhaustion requirement to be a necessary predicate to this Court's exercise of jurisdiction.").

Federal regulations describe the process by which an FTCA claim is presented. Specifically, 28 C.F.R. § 14.2 provides, in pertinent part:

> a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for … personal injury … alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

> 28 C.F.R. § 14.2(a).

A claimant has not exhausted her administrative remedies until she receives a final denial from the agency "in writing and sent by certified or registered mail." 28 U.S.C.A. § 2675(a). Alternatively, the "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall … be deemed a final denial of the claim." 28 U.S.C.A. § 2675(a).

In this case, Plaintiff's counsel, Jonathan Corbett, faxed a document

7

entitled "Federal Tort Claims Act Claims Notice – Erin Osmon" (the "Notice") to "TSA Claims Management Branch" on September 5, 2019. Doc. 8-2, pp. 12-13. Mr. Corbett also forwarded a copy of this document by email to Brett Barber, who is an employee of the TSA and a paralegal in the office of the Chief Counsel. Doc. 8-2, pp. 1-4 & p. 12. The Notice described the incident that allegedly occurred between Plaintiff and Robinson on June 27, 2019 and stated that Plaintiff's rights under the Fourth Amendment and state law had been violated. The Notice further stated that Mr. Corbett was presenting a claim for the alleged incident and demanded compensation in the amount of $1,000,000.00. Doc. 8-2, pp. 12-13. The Notice was signed by Mr. Corbett, though not by Plaintiff, and certified that the claim was made with "Mrs. Osmon's authority … on her behalf." Doc. 8-2, p. 13.

On September 26, 2019, Mr. Barber sent an email to Plaintiff's counsel which stated in part as follows:

> This is in response to your below email attaching the administrative claim of Erin Osman [sic] against the United States under the Federal Tort Claims Act….
>
> Pursuant to 28 C.F.R. §14.2 (a) of the FTCA regulations, a representative must submit "evidence of his authority to present a claim on behalf of the claimant." Because your email and attachment do not contain evidence of your representative authority, which may be established by a document signed by Ms. Osman [sic] authorizing you to represent her in the administrative claim (e.g., retainer agreement), you have not satisfied the regulatory requirement,

8

and we are unable to process the claim further until such evidence is received. Please submit the evidence of your representative authority to my attention by email or at the below address....

This email should not be construed as a denial of the claim. TSA stands ready to process the claim but cannot do so until you provide sufficient evidence of your authority to present the claim on behalf of Ms. Osman [sic]. If you choose not to honor TSA's reasonable request for a document signed by her to establish your representative authority, then you are electing not to participate in the agency's administrative process, and the claim will remain unprocessed.

Doc. 8-2, p. 15.

Plaintiff's counsel responded that night in part as follows:

Thank you for replying and indicating that you will not be processing this request. Our position is that the signature of an attorney on a letter that identifies the attorney as authorized to represent the client is sufficient to meet the requirements of the FTCA and regulations implementing the same, and that therefore, the TSA lacks authority to demand additional documentation as a condition of processing an FTCA claim.

As you have indicated that you will not be conducting any further processing of this claim, this is a denial, and we will treat it that way and begin litigation. Notwithstanding, if TSA would like to re-evaluate its position and process this claim as it is legally required to do, please notify me by 5 PM eastern on Monday, September 30, 2019 and we will hold on litigation.

Doc. 8-2, p. 15.

9

On February 4, 2020, Plaintiff filed her Complaint. Doc. 1.

### a. Evidence of Authority to Present a Claim

The United States argues that the Notice was insufficient to constitute "evidence of … authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative" pursuant to 28 C.F.R. § 14.2(a). Specifically, it contends that the TSA requires "that any claim submitted by a representative on behalf of a claimant must be accompanied by a document signed by the claimant himself or herself to authorize the representative to present the claim to TSA" and that Plaintiff was made aware of this requirement and did not submit this documentation. Doc. 10, p. 3 (quoting Doc. 8-2, p. 15).

Plaintiff counters that "[n]o court has ever required an attorney to present a writing signed by the client in order for an attorney to submit an FTCA claim notice." Doc. 9, p. 19-20.

However, in <u>Erway v. United States Transportation Security Administration</u>, No. 5:20-cv-141-M, 2020 WL 6370981 (E.D.N.C. Oct. 29, 2020), the United States District Court for the Eastern District of North Carolina analyzed facts similar to those presented in this case.[4] There, the plaintiff's counsel emailed a letter to the TSA purporting to present an

---

[4] Plaintiff filed her opposition on May 18, 2020. Doc. 9. <u>Erway</u> was decided on October 29, 2020. Plaintiff's counsel in this matter also represented the plaintiff in <u>Erway</u>.

administrative claim seeking monetary damages related to a security screening by a TSA employee of the plaintiff and her minor child. Four days later, a TSA representative responded by email noting that the submission did "not contain evidence of [plaintiff's counsel's] representative authority" or "evidence that [plaintiff] is the parent or guardian." Erway, 2020 WL 6370981, at * 1. The TSA representative requested this evidence from the plaintiff's attorney, stating that the TSA was ready to process the claim once such evidence was received and that the communication should not be considered a denial of the claim. Id. Several months later, the plaintiff filed suit, alleging that the TSA's response was an effective denial of her purported administrative claim. In response, the United States successfully moved to dismiss the plaintiff's FTCA claim based on a failure to exhaust her administrative remedies. Id. at 5.

The undersigned finds the reasoning in Erway to be persuasive. As explained therein, the Department of Justice has "promulgated regulations regarding when an administrative claim is considered to have been properly presented to a federal agency for FTCA purposes," and "[a]lthough such regulations are not created by Congress, they have the force of law and are enforced by federal courts and agencies." Erway, 2020 WL 6370981, at * 4 (citing 28 C.F.R. § 14.2(a); Ahmed v. United States, 30 F.3d 514, 516-18(4th Cir. 1994)(affirming dismissal of FTCA suit for failure to satisfy § 14.2(a);

<u>Kokotis v. U.S. Postal Serv.</u>, 223 F.3d 275 (4th Cir. 2000)).

Here, in response to the Notice, the TSA requested evidence of counsel's representative authority, explicitly stating that the response was not a denial of Plaintiff's claim and advising that the TSA stood "ready to process the claim" following receipt of evidence of counsel's authority. Doc. 8-2, p. 15. However, counsel never provided the requested evidence, and instead proceeded to file the instant action. As in <u>Erway</u>, this failure deprives the court of jurisdiction to consider Plaintiff's FTCA claim. 2020 WL 6370981, at * 4 (citing <u>Kana v. United States</u>, 118 F3d 527, 531 (7th Cir. 1997)). While Plaintiff argues that the Notice should constitute sufficient evidence of authority because her counsel is "well-known to TSA's claims management staff," and because Federal Rule of Civil Procedure 11 authorizes an attorney to sign pleadings on a client's behalf, <u>see</u> Doc. 9, p. 19, "Plaintiff's counsel's known status as an attorney is not evidence that Plaintiff's counsel has the authority to represent any particular claimant," <u>Erway</u>, 2020 WL 6370981, at * 4, and the certification in the Notice is not sworn. <u>See Kulhawik v. Holder</u>, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.... But when an attorney makes statements under penalty of perjury in an affidavit or an affirmation, the statements do constitute part of the evidentiary record and must be considered.")).

## b. Final Notice of Denial

The United States also contends that Mr. Barber's September 26, 2019 email was not a final denial of Plaintiff's claim pursuant to 28 C.F.R. § 2675(a).[5] The undersigned agrees.

First, the language used in the September 26 email indicates that it was not a final denial of Plaintiff's claim. Specifically, Mr. Barber stated that the message should not be construed as being a denial of the claim and that the TSA stood ready to process the claim upon receipt of evidence of Mr. Corbett's authority. Mr. Barber also expressly stated that if such information was not provided, the claim would remain unprocessed.

Second, Mr. Barber's response was sent by email; it was not "sent by certified or registered mail" and there is no indication that any separate writing was issued to Plaintiff denying the claim.[6]

Because Plaintiff filed her FTCA claim in this Court prior to

---

[5] Even assuming the claim had been presented properly, the lack of a response by the TSA could not have been construed as a final denial pursuant to 28 U.S.C.A. § 2675(a), as the Notice was submitted on September 5, 2019 and the action was filed less than six months later on February 4, 2020.

[6] Plaintiff argues that "§ 2675(a)'s 'registered or certified mail' requirement is intended for the benefit of the claimant, not the benefit of the agency." Doc. 9, p. 21. However, Plaintiff does not provide controlling authority supporting this position. See Doc. 9, p. 21. (citing Lehman v. United States, 154 F.3d 1010, 1015 (9th Cir. 1998) ("When an agency properly mails a notice of final denial, the six month statute of limitations, 28 U.S.C. § 2401(b), begins to run.") and Miller v. United States, 741 F.2d 148, 150 (7th Cir. 1984) (statute of limitations did not begin to run because, *inter alia*, the purported denial letter was not sent by registered or certified mail)).

13

exhausting her administrative remedies, the undersigned will recommend that Plaintiff's FTCA claim against the United States be dismissed without prejudice for lack of jurisdiction.

### 2.     Sovereign immunity

The United States also argues that even if Plaintiff's administrative remedies have been exhausted, Plaintiff's claim against the United States is nonetheless barred as sovereign immunity for such a claim has not been waived.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). "Sovereign immunity is jurisdictional in nature," id., and "[t]he plaintiff bears the burden of showing that the government has waived sovereign immunity at the motion to dismiss stage." Robinson v. United States Dep't of Educ., 917 F.3d 799, 802 (4th Cir. 2019) (citations omitted).

The FTCA provides a limited waiver of sovereign immunity for certain tort claims. See Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); 28 U.S.C. § 1346(b). Specifically, the statute allows a district court to consider claims against the United States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

14

employment." 28 U.S.C. § 1346(b)(1).

This limited waiver of sovereign immunity, however, does not apply generally to claims arising from the intentional torts of federal employees. 28 U.S.C. § 2680(h) ("the United States does not waive sovereign immunity as to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.").

Yet, there is an exception to the exception. That provision, known as the "law enforcement proviso," states:

> That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).

Thus, for present purposes, sovereign immunity has been waived with respect to Plaintiff's battery claim against the United States if Robinson was an "investigative or law enforcement officer" of the United States. <u>See</u> <u>Corbett v. Trans. Sec. Admin.</u>, 568 Fed. Appx 690, 700 (11th Cir. 2014) (per

curiam).

Here, the parties agree that TSA screeners are not "law enforcement" officers, but they disagree as to whether TSA screeners are "investigative" officers for purposes of § 2680(h). Doc. 8, pp. 10-24; Doc. 9, pp. 7-14. Resolution of this issue requires a substantive analysis of the reach of the "law enforcement proviso" in 28 U.S.C. § 2680(h), a matter that has been the subject of considerable debate. Compare Pellegrino v. United States of Am. Transportation Sec. Admin., Div. of Dep't of Homeland Sec., 937 F.3d 164, 172 (3d Cir. 2019) (finding TSA screeners are officers under the proviso); Iverson v. United States, 973 F.3d 843 (8th Cir. 2020) (same) with Corbett, 568 Fed. Appx at 700 (finding that TSA screeners are not subject to the law enforcement proviso); see also Weinraub v. United States, 927 F. Supp. 2d 258, 263 (E.D.N.C. 2012) (finding that, because TSA screeners are not "investigative or law enforcement officers" within the meaning of § 2690(h), the law enforcement proviso to the intentional torts exception does not apply to TSA screeners); Hernandez v. United States, 34 F.Supp.3d 1168, 1180 (D. Colo. 2014) (finding Weinraub persuasive for the premise that TSA screeners did not fall under the law enforcement proviso); Welch v. Huntleigh USA Corp., No. 04-663 KI, 2005 WL 1864296, at *5 (D. Or. Aug. 4, 2005) (finding that, because TSA screeners "were only able to perform consensual searches, and had no authority to arrest, they cannot be considered law enforcement

16

officers for the purpose of the FTCA.").

In view of the undersigned's conclusion that Count 1 of Plaintiff's Complaint should be dismissed without prejudice for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust her administrative remedies, the undersigned recommends that a substantive analysis of this alternative argument not be undertaken.

### B. Robinson's Motion to Dismiss

Robinson argues that Plaintiff's Complaint must be dismissed because (1) there is no <u>Bivens</u> remedy available under the facts alleged; and (2) Robinson is entitled to qualified immunity.

### 1. The Availability of a <u>Bivens</u> Remedy

"By itself, 'the Constitution does not ordinarily provide a private right of action for constitutional violations by federal officers.'" <u>Linlor v. Polson</u>, 263 F.Supp.3d 613, 619 (E.D. Va. July 11, 2017) (quoting <u>Big Cats of Serenity Springs, Inc. v. Rhodes</u>, 843 F.3d 853, 859 (10th Cir. 2016)).

"In 1971, however, the Supreme Court decided *Bivens*, holding that, even absent statutory authorization, a man who had alleged that federal narcotics officers had searched his apartment and arrested him for alleged narcotics violations without a warrant or probable cause and that the officers had used unreasonable force in doing so could sue those officers on an implied claim for money damages under the Fourth Amendment." <u>Tun-Cos v.</u>

Perrotte, 922 F.3d 514, 520 (4th Cir. 2019) (discussing Bivens). Thereafter, the Supreme Court found a Bivens remedy was available in Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (equal protection component of Fifth Amendment's Due Process Clause provided damages remedy in suit where administrative assistant alleged a Congressman fired her because she was a woman) and Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment's Cruel and Unusual Punishment Clause provided damages remedy for prisoner's estate where prisoner died due to federal jailers' failure to treat his asthma).

However, the Fourth Circuit has explained that "[i]n the almost 40 years since Carlson…the Court has declined to countenance Bivens actions in any additional context" Tun-Cos, 922 F.3d at 521 (emphasis in original), and has characterized the Supreme Court's "recent guidance on the continued availability of Bivens actions" as "open hostility to expanding Bivens liability…." Id. (citing Ziglar v. Abbasi, ---U.S. ---, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017) ("in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three Bivens cases might have been different if that were decided today.").

In Abbasi, the Supreme Court explained that "expanding the Bivens remedy is now a 'disfavored' judicial activity," and that

18

When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts? <u>Bush</u>, 462 U.S., at 380, 103 S.Ct. 2404.

The answer most often will be Congress. When an issue "'involves a host of considerations that must be weighed and appraised,'" it should be committed to "'those who write the laws'" rather than "'those who interpret them.'" <u>Ibid</u>. (quoting <u>United States v. Gilman</u>, 347 U.S. 507, 512–513, 74 S.Ct. 695, 98 L.Ed. 898 (1954)). In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if "'the public interest would be served'" by imposing a "'new substantive legal liability.'" <u>Schweiker</u>, <u>supra</u>, at 426–427, 108 S.Ct. 2460 (quoting <u>Bush</u>, supra, at 390, 103 S.Ct. 2404). As a result, the Court has urged "caution" before "extending *Bivens* remedies into any new context." <u>Malesko</u>, <u>supra</u>, at 74, 122 S.Ct. 515. The Court's precedents now make clear that a *Bivens* remedy will not be available if there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" <u>Carlson</u>, 446 U.S., at 18, 100 S.Ct. 1468 (quoting <u>Bivens</u>, 403 U.S., at 396, 91 S.Ct. 1999).

<u>Abbasi</u>, 137 S.Ct. at 1857-1858.

Accordingly, when determining whether a <u>Bivens</u> remedy is available against Robinson, this Court must first "inquire whether a given case presents a 'new *Bivens* context.'" <u>Tun-Cos</u>, 922 F.3d at 522-523. "If the context is not new — i.e., if the case is not 'different in [any] meaningful way'

from the three cases in which the Court has recognized a *Bivens* remedy —
then a *Bivens* remedy continues to be available. But if the context is new,
then courts must, before extending *Bivens* liability, evaluate whether there
are 'special factors counselling hesitation in the absence of affirmative action
by Congress.' If any such 'special factors' do exist, a *Bivens* action is not
available." Id. at 523 (internal citations omitted).

### a. Does this Case Present a New Context?

Plaintiff argues that she has presented a claim "substantially similar to
*Bivens*" because both Bivens and the instant case involve "low-ranking
employees" of an agency, and both deal with a one-time alleged violation of
the Fourth Amendment right to be free from unreasonable searches and
seizures. Doc. 16, p. 7.

For a case to be "'different in a meaningful way from [the three]
previous *Bivens* cases,' a radical difference is not required" Tun-Cos, 922 F.3d
at 523 (citing Abbasi, 137 S.Ct. at 1859); "even a modest extension is still an
extension" for purposes of the "new context" analysis. Abbasi, 137 S.Ct. at
1864; accord Wilson v. Libby, 498 F.Supp.2d 74, 86 (D.D.C. 2007), *aff'd*, 535
F.3d 697 (D.C.Cir. 2008) ("*Bivens* actions are not recognized Amendment by
Amendment in a wholesale fashion" but are "context specific.").

Here, this case involves an airport screening by a TSA screener rather
than the type of law enforcement activity present in Bivens. The

20

undersigned agrees with the conclusion reached in <u>Linlor</u> that this difference in setting and class of defendant creates a new "context" for purposes of <u>Bivens</u>. <u>See</u> <u>Linlor</u>, 263 F.Supp.3d at 620; <u>see also</u> <u>Tun-Cos</u>, 922 F.3d at 524-525 (finding Fourth Amendment <u>Bivens</u> claim against ICE officers presented a new context because the "ICE agents were not enforcing the criminal law, as in *Bivens*, but rather were enforcing the immigration law of the INA," which "implicates broad policy concerns distinct from the enforcement of criminal law," and because the plaintiff sought to "extend *Bivens* liability to a new category of defendants….").

Here, as it appears that Plaintiff is seeking to extend a <u>Bivens</u> remedy to a new context, the question becomes whether there are any "special factors counseling hesitation [in extending a *Bivens* remedy] in the absence of affirmative action by Congress." <u>Tun-Cos</u>, 922 F.3d at 525 (citing <u>Abbasi</u>).

### b. Are There Special Factors Counseling Hesitation?

The Supreme Court "has not defined the phrase 'special factors counselling hesitation.'" <u>Abbasi</u>, 137 S.Ct. at 1857. It has, however, explained that the inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id</u>. at 1857. Further,

> It is true that, if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations. Yet

21

the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies. These and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case.

Sometimes there will be doubt because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere. See Chappell, supra, at 302, 103 S.Ct. 2362 (military); Stanley, supra, at 679, 107 S.Ct. 3054 (same); Meyer, supra, at 486, 114 S.Ct. 996 (public purse); Wilkie, supra, at 561–562, 127 S.Ct. 2588 (federal land). And sometimes there will be doubt because some other feature of a case—difficult to predict in advance—causes a court to pause before acting without express congressional authorization. In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

In a related way, if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action. For if Congress has created "any alternative, existing process for protecting the [injured party's] interest" that itself may "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in

damages." Wilkie, supra, at 550, 127 S.Ct. 2588; see also Bush, supra, at 385–388, 103 S.Ct. 2404 (recognizing that civil-service regulations provided alternative means for relief); Malesko, 534 U.S., at 73–74, 122 S.Ct. 515 (recognizing that state tort law provided alternative means for relief); Minneci, supra, at 127–130, 132 S.Ct. 617 (same).

Abbasi, 137 S.Ct. at 1858.

### i. Alternative Remedial Procedures

Robinson argues that the availability of alternative remedial processes – specifically, the ability to challenge the TSA's standard operating procedures in the U.S. Court of Appeals pursuant to 49 U.S.C. § 46110,[7] the Department of Homeland Security's civil rights complaint process pursuant to 6 U.S.C. § 345(a)(1), and Plaintiff's ability to complain to both law enforcement officers and TSA management at the checkpoint – indicate that

---

[7] 49 U.S.C. § 46110(a) provides:

> a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

no <u>Bivens</u> remedy should be allowed. Doc. 15, pp. 7-12.

In response, Plaintiff argues that § 46110 is inapplicable because she is asserting a claim based on Robinson's "breaking" of a TSA policy and that "the availability of a TSA complaint department, or a willing ear of a police officer or a supervisor, is not in any way a 'remedy'" because "none of these parties are even authorized, let alone duty-bound, to provide any kind of remedy to one in the situation of Plaintiff." Doc. 16, p. 11. Plaintiff further contends that this Court "should carefully ensure that Plaintiff's injury would be *fully* redressed by alternative remedies before closing the door [to <u>Bivens</u>]." Doc. 16, p. 12 (emphasis in original).

However, the question is not whether Plaintiff's injury can be fully redressed by alternative remedies, but whether a judicially created <u>Bivens</u> remedy should be found, notwithstanding the existence of an alternative. <u>See</u> <u>Tun-Cos</u>, 922 F.3d at 527 (fact that statutory protections did not provide for monetary damages "misses the point"); <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421-422, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) ("The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."); <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) ("any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the

24

best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified.").  As discussed below, even assuming no alternative, remedial structure exists, other factors counsel against creating a <u>Bivens</u> remedy here.

### ii.    Other Factors

Robinson contends that although Congress has legislated "extensively with regard to airport security screening," it has "never authorized a cause of action for damages against TSA screeners in their individual capacities," that "a TSA security screening checkpoint is a 'uniquely sensitive area' where the actions or inactions of screeners can have national security implications," and that allowing a claim such as the one asserted here would create "an unworkable category of constitutional litigation" given the high volume of screenings that occur and the screeners' need to make "ad hoc, multifactorial determinations…" <u>See</u> Doc. 15, pp. 12-16.  Relatedly, Robinson argues that "the Court should consider the potential chilling effect of recognizing a *Bivens* remedy in the context of airport security, where 'the stakes are so high and the consequences of a lapse in security so potentially catastrophic.'"  Doc. 15, p. 17 (quoting <u>Mohamed v. Holder</u>, 995 F.Supp.2d 520, 527 (E.D.Va. 2014)).

Although not controlling, the Third Circuit's discussion in <u>Vanderklok v. United States</u>, 868 F.3d 189 (3d Cir. 2017) is instructive to the issues

raised here. There, the plaintiff's carry-on luggage (containing a heart monitor and watch stored inside a PVC pipe) triggered a secondary security screening, and the plaintiff alleged that the TSA employee who conducted the screening was so disrespectful and aggressive that the plaintiff stated he intended to file a complaint against the employee. The plaintiff further alleged that, in retaliation, the TSA employee called the police and falsely reported that the plaintiff had threatened to bring a bomb to the airport. The court found that the plaintiff's First Amendment retaliation claim against the TSA screener presented a "new context," assumed that no meaningful remedy was available to the plaintiff, and then proceeded to find that special factors counseled hesitation in allowing a <u>Bivens</u> remedy. The court explained that the "TSA was created in response to the terrorist attacks of September 11, 2001, specifically for the purpose of securing our nation's airports and air traffic," and that the plaintiff's claim could be seen as implicating the United States' "'whole response to the September 11 attacks, thus of necessity requiring an inquiry into sensitive issues of national security.'" <u>Id</u>. at 206 (quoting <u>Abbasi</u>, 137 S.Ct. at 1861). The <u>Vanderklok</u> court went on to explain,

> [Plaintiff] asks us to imply a *Bivens* action for damages against a TSA agent. TSA employees like Kieser are tasked with assisting in a critical aspect of national security—securing our nation's airports and air traffic. The threat of damages liability could indeed increase the probability that a TSA agent would hesitate in making split-second decisions about

> suspicious passengers. In light of Supreme Court
> precedent, past and very recent, that is surely a
> special factor that gives us pause.

Id. at 207.

Additionally, the court explained that Congress was in a far better position to evaluate the impact of a "'new species of litigation' against those who act on the public's behalf," Id. at 208 (quoting Wilkie, 551 U.S. at 562), and that the limited scope of judicial review of TSA actions (as developed by Congress) counseled hesitation.  Id. ("we cannot ignore that remedies in the airport security context are circumscribed as a direct result of Congressional decisions.") (citing Abbasi, 137 S.Ct. at 1862 ("Congress' failure to provide a damages remedy might be more than mere oversight, and that congressional silence might be more than 'inadvertent.'")).  Ultimately, the court concluded that "the role of the TSA in securing public safety is so significant that we ought not create a damages remedy in this context."  Id. at 209; see also Scruggs v. Nielen, No. 18 cv 2109, 2019 WL 1382159, at * 5, n. 9 (N.D. Ill. March 27, 2019) (noting there was no Bivens remedy against unidentified TSA agents and that "[a]lthough they are alleged to have directly committed the searches and seizures, the searches were in the security-screening context; no court has applied *Bivens* to these administrative, special-needs searches and it would be an extension to do so now. On top of that, the added national-security issues apply to the TSA agents…").

The undersigned finds the Vanderklok court's reasoning to be persuasive. Further, although the Fourth Circuit has not directly ruled on this issue, it has cited Vanderklok with approval when considering the availability of a Bivens remedy in the context of immigration enforcement. See Tun-Cos, 922 F.3d at 526 (concluding that immigration enforcement has the natural tendency to affect diplomacy, foreign policy, and national security such that no Bivens remedy existed, and citing Vanderklok, 868 F.3d 189, 209 (3d Cir 2017) for support by analogy).[8]

Accordingly, the undersigned will recommend granting Robinson's Motion to Dismiss.

### 2. Qualified Immunity

The undersigned has considered Robinson's alternative basis for dismissal – that she is entitled to qualified immunity – only in the event the District Court disagrees with the above conclusion regarding the existence of

---

[8] The Eastern District of Virginia reached an opposite result in Linlor v. Polson, 263 F.Supp.3d 613 (E.D.Va. July 11, 2017), and permitted a Bivens remedy to proceed against an airport security screener who had allegedly struck the plaintiff in the groin during an airport security screening. However, the court relied on earlier district court cases permitting Bivens actions against TSA officers and those cases were later reversed on appeal. See Linlor, 263 F.Supp.3d at 624 (citing Vanderklok v. United States, No. 15-00370, 2016 WL 4366976, at &* 7 (E.D.Pa. Aug. 16, 2016), *reversed in part*, 868 F.3d 189 (3d Cir. 2017) and Pellegrino v. U.S. Transp. Sec. Admin, No. 09-5505, 2014 WL 1489939 (E.D. Pa. April 16, 2014), *reversed in part*, 937 F.3d 164, 180 (3d Cir. 2019) ("We have already held (and correctly so) that TSOs are not susceptible to an implied right of action under *Bivens* for alleged constitutional violations…").

a <u>Bivens</u> remedy against Robinson. <u>See Wilkie</u>, 551 U.S. at 567, 127 S.Ct. 2588 ("Because neither *Bivens* nor RICO gives Robbins a cause of action, there is no reason to enquire further into the merits of his claim or the asserted defense of qualified immunity."); <u>Tun-Cos</u>, 922 F.3d at 528 ("Because [of conclusion that no <u>Bivens</u> remedy was available], we do not reach the ICA agents' claim of qualified immunity.").

"An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." <u>Pearson v. Callahan</u>, 555 U.S. 223, 243, 129 S.Ct. 808, 172 L.Ed.565 (2009). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" <u>Id</u>. at 244 (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). In the airport security context, a screening is "'constitutionally reasonable provided that it 'is no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives [ ][and] that it is confined in good faith to that purpose.'" <u>Linlor</u>, 263 F.Supp.3d at 627-628 (quoting <u>United States v. Aukai</u>, 497 F.3d 955, 962 (9th Cir. 2007)).

Although Robinson argues that "Plaintiff has not identified *any* precedent establishing bright line boundaries on the specific parameters of a pat-down," Doc. 18, p. 10 (emphasis in original), Plaintiff has alleged that she

was sexually assaulted during an airport security screening. Doc. 1, ¶ 4. Taking such allegations as true for purposes of the instant Motion, Plaintiff has alleged that her airport screening was excessive and was not confined in good faith to the purpose of ensuring security. See Linlor, 263 F.Supp.3d at 628 (defendant who allegedly struck plaintiff in the groin during airport screening was not entitled to qualified immunity at the motion to dismiss stage because "[t]he search in question went well beyond what was necessary to detect contraband, and was not confined to that purpose."); Cf. Blakley v. Bates, No. 1:14cv165-MR-DLH, 2016 WL 6908103, at * (W.D.N.C. Nov. 23, 2016) ("In the present case, it is not disputed that the right of an inmate to be free from sexual assault by a guard is a clearly established right under the Eighth Amendment.") (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute of terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise.")).

Therefore, should a Bivens remedy be found to exist, the undersigned would not recommend dismissal of such a claim on qualified immunity grounds at this stage.

## IV. Recommendations

Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully **RECOMMENDS** that:

1. The United States' Motion to Dismiss (Doc. 7) be granted, and Plaintiff's FTCA claim be dismissed without prejudice; and

2. TSO Robinson's Motion to Dismiss Plaintiff's Complaint (Doc. 14) be granted, and Plaintiff's <u>Bivens</u> claim be dismissed with prejudice.

W. Carleton Metcalf
United States Magistrate Judge

Signed: December 7, 2020

31

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).